# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRYANT D. SMITH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 21-1044-GBW |
| | : |
| WASTE MASTERS SOLUTIONS, LLC, | : |
| | : |
| Defendant. | : |

Bryant D. Smith, New Castle, Delaware – *Pro se* Plaintiff

James H. McMackin, III, MORRIS JAMES LLP, Wilmington, Delaware – Counsel for Defendant Waste Masters Solutions, LLC

## **MEMORANDUM OPINION**

February 21, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

I. **INTRODUCTION**

On July 19, 2021, Plaintiff Bryant D. Smith, of New Castle, Delaware, initiated this *pro se* action alleging employment discrimination claims against Defendant Waste Masters Solutions, LLC, of Wilmington, Delaware. (D.I. 2.) The Complaint is the operative pleading. (*Id.*) Now before the Court is Defendant's motion for summary judgment. (D.I. 29; *see also* D.I. 30 (supporting memorandum); D.I. 31 (response); D.I. 32 (reply).) Also pending before the Court are six additional motions filed by Plaintiff. (*See* D.I. 22 (motion to amend Complaint); D.I. 27 (second motion to amend); D.I. 28 (motion to subpoena therapist); D.I. 31 (motion for court date); D.I. 34 (third motion to amend); D.I. 35 (second motion for court date)). The Court addresses all pending motions below.

II. **BACKGROUND**

The Complaint asserts Civil Rights Act (CRA) Title VII causes of action against Defendant arising from race-based harassment, retaliation, and termination on December 13, 2018. (D.I. 2.) Plaintiff filed charges with the Equal Employment Opportunity Commission (EEOC) regarding Defendant's alleged discriminatory conduct on April 1, 2019, and the EEOC issued a Notice of Right to Sue, which Plaintiff received on April 27, 2021. (*Id.*) The EEOC found reasonable cause to

1

believe that violations occurred, but it could not obtain a settlement with Defendant, and it decided not to sue Defendant. (D.I. 2-1 at 1.)

According to the Complaint, Plaintiff worked as a driver for Defendant, a waste collection company, from December 12, 2016, until his discharge on December 13, 2018.[1] (D.I. 2-1 at 6.) Plaintiff first presented a discrimination complaint to the Delaware Department of Labor (DDOL) on September 14, 2018, three months before his employment was terminated.[2] (*Id.*) Plaintiff reported to DDOL that his coworker, Michael Patchett, called Plaintiff a "proud n . . . "[3] in front of the head of operations, Ron Tuder, in August 2018.[4] (*Id.*) Tuder responded to the incident by telling Plaintiff, "Don't worry about it, you're making money."[5] (*Id.*)

---

[1] Defendant asserts that Plaintiff's position was terminated on September 13, 2018. (D.I. 30 at 3.)

[2] Defendant asserts that it terminated Plaintiff's position the day before Plaintiff initiated the DDOL complaint. (*Id.*)

[3] The Court uses redaction to avoid unnecessary repetition of the racially charged slur alleged throughout the Complaint; this redaction is not intended to diminish the force of the allegations, nor does it imply judgment on the merits.

[4] Defendant asserts that Tuder knew nothing of this allegation. (*Id.* at 4.)

[5] Defendant asserts that "this accusation is adamantly denied." (*Id.*)

Patchett continued to call Plaintiff this racially charged slur for two months, until Plaintiff complained to another supervisor, Jim McGrody.[6] (*Id.*) McGrody then had a private meeting with Patchett and Plaintiff, in which Patchett apologized to Plaintiff.[7] (*Id.*)

One month later, Plaintiff was involved in a dispute with another driver at a worksite, and this other worker falsely reported to Tuder that Plaintiff "had chased him around the yard," which resulted in Defendant terminating Plaintiff's employment.[8] (*Id.* at 6-7.) Plaintiff believed that this was a false pretense for termination.[9] (*Id.* at 7.)

---

[6] Defendant asserts that this supervisor's last name is McGroerty and that Plaintiff told McGroerty that Patchett had said, "You are not a proud n . . . like your brother," to Plaintiff on a single occasion several months before. (D.I. 30 at 4.)

[7] Defendant asserts that this meeting took place in August 2018, shortly before Plaintiff's termination. (*Id.*) Defendant further asserts that, in the meeting, "Patchett denied having said anything of the sort," "Patchett said that if Plaintiff thought Patchett said anything of the sort, he sincerely apologized," and "Plaintiff said that they were 'all good.'" (*Id.*)

[8] Defendant asserts that this altercation between Plaintiff and a driver from another company occurred at a local landfill, where waste collection drivers operating in the area deposit waste. (*Id.* at 3.) Defendant further asserts that the landfill's district manager informed Tuder of the altercation and said that Plaintiff would not be permitted at the landfill while the investigation of the altercation was ongoing. (*Id.*) Last, Defendant asserts that Plaintiff allegedly threatened the other driver with a metal pipe during the altercation. (*Id.*)

[9] Defendant asserts that, ultimately, the landfill's district manager informed Tuder that Plaintiff was permanently banned from the landfill, and no other landfill in the

On May 2, 2019, Plaintiff reported that Patchett continued to harass Plaintiff and interfere with his ability to make money, even after Defendant had terminated his employment. (*Id.* at 5.) After termination, Plaintiff found work as a driver for a new employer. (*Id.*) Plaintiff encountered Patchett again while on the job at a local landfill. (*Id.*) Upon seeing Plaintiff, Patchett went to the landfill management office, said that Plaintiff was banned from the worksite, and encouraged management to enforce the ban.[10] (*Id.*)

Allegedly, Defendant had banned Plaintiff from the landfill after the dispute with the other worker.[11] (*Id.* at 11.) This ban rendered Plaintiff unable to deposit waste at the landfill, which was one of Plaintiff's core job duties as a driver. (*Id.*) Because Plaintiff could not complete his core job duties, Defendant terminated Plaintiff's employment. (*Id.*) Plaintiff reported that other employees of different

---

area accepted waste, so Plaintiff could no longer do his job as a waste collection driver, and Defendant terminated Plaintiff's employment on this basis. (D.I. 30 at 3.)

[10] Defendant asserts that in April or May 2019, Patchett saw someone resembling Plaintiff at the landfill, but he "was wearing a disguise in warm weather (facemask) to hide his identity." (*Id.* at 5.) Defendant further asserts that Patchett asked the landfill scale operator, "Isn't he banned from the landfill?" and then said nothing else about the matter, and never encountered Plaintiff again. (*Id.*)

[11] Defendant asserts that the landfill district manager banned Plaintiff from the landfill. (Id. at 3.)

races were treated more favorably by Defendant in similar situations, as they were "coached or provided a letter discipline" instead of being discharged. (*Id.*) Yet, Plaintiff acknowledged that, in 2016, Defendant terminated the employment of a Caucasian employee because he was banned from the same landfill. (*Id.*)

DDOL found in its preliminary decision of investigation that Plaintiff had sufficiently established that he belonged to the protected class of race (African American), he had experienced a material adverse employment action, and employees outside of his protected class were treated more favorably. (*Id.*) Plaintiff had also sufficiently established that there was a causal connection between Plaintiff complaining about the use of racial slurs in the workplace and the termination of his employment. (*Id.* at 11-12.) Moreover, Plaintiff had sufficiently established that he was subjected to harassment, and he was placed in a hostile work environment, by being called a "proud n . . ." in the workplace. (*Id.* at 12.) Last, DDOL found that Defendant did not provide an adequate affirmative defense and Plaintiff's termination was concluded to be pretextual. (*Id.*) Accordingly, DDOL concluded that "there is sufficient evidence to support a conclusion that illegal discrimination occurred." (*Id.*)

On April 22, 2024, Plaintiff submitted receipts to the Court to show that he had been to the landfill in question as a driver for other companies after Defendant terminated Plaintiff's employment. (D.I. 31-1.) Based on these receipts, Plaintiff

5

asserted that he had never been banned from the landfill by the landfill management office, rendering Defendant's basis for termination pretextual. (D.I. 31 at 2-3.)

Last, on July 19, 2024, Plaintiff submitted psychotherapy notes from November 2021 through June 2022. (D.I. 35-1 at 27-55.) These notes reflect that Plaintiff discussed being called a "proud n . . ." in the workplace, termination by Defendant, and the instant civil action, with a therapist. (*Id.*) These notes also reflect diagnoses of major depressive disorder and generalized anxiety disorder. (*Id.*)

To date, Defendant has filed no discovery responses or evidentiary exhibits. Defendant appears to argue that Plaintiff's failure to respond to a March 13, 2024 letter from Defendant, which requested Plaintiff's discovery disclosures, prevented Defendant from complying with its own discovery obligations. (*See* D.I. 30; *see also* D.I. 18 (ordering both parties to complete discovery on or before March 11, 2024.)

## III. LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing

law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Where the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B)

7

showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted). Conversely,

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## IV. <u>DISCUSSION</u>

First, the Court considers Plaintiff's motion to amend the Complaint (D.I. 22), second motion to amend (D.I. 27), and third motion to amend (D.I. 34). The Court will deny the motions to amend, as they all propose adding Plaintiff's therapist and the National Association for the Advancement of Colored People (NAACP) Delaware State Conference President as parties to this action. Plaintiff's proposed Amended Complaint merely reiterates claims previously presented in the Complaint, and there is no apparent basis for adding Plaintiff's therapist and the NAACP President as parties to the case. (*See* D.I. 21.) Accordingly, Plaintiff's motions to amend the Complaint will be denied without prejudice to renewal; the Complaint remains the operative pleading.

Next, the Court considers Defendant's motion for summary judgment. (D.I. 29.) To review, the Complaint alleges race-based harassment, retaliation, and termination by Defendant, in violation of Title VII. (D.I. 2.) Starting first with the alleged harassment, Plaintiff must show the following to establish a Title VII hostile work environment claim: (1) he "suffered intentional discrimination because of" his race; (2) "the discrimination was severe or pervasive;" (3) "the discrimination

detrimentally affected" him; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances;" and (5) "the existence of *respondeat superior* liability." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). The Court draws all reasonable inferences in Plaintiff's favor, as is required upon Defendant's motion for summary judgment. *Reeves*, 530 U.S. at 150.

According to the Complaint and the evidence before the Court, Plaintiff was called a racially charged slur by a coworker in front of a supervisor who told Plaintiff not to worry about it and took no further action. This coworker allegedly continued to call Plaintiff by this slur for several months, until Plaintiff complained to a different supervisor. The second supervisor addressed the issue in a private meeting with Plaintiff and the coworker, but several weeks later, Defendant terminated Plaintiff's employment. Allegedly, the reason Defendant provided for termination—that Plaintiff was banned from a local landfill—was untrue, as Plaintiff subsequently returned to the landfill as a waste collection driver for other employers without issue, apart from one occasion when Plaintiff encountered his former coworker at the landfill. In addition to affecting Plaintiff's employment, these events allegedly affected Plaintiff's mental health, resulting in ongoing treatment for major depressive disorder and generalized anxiety disorder.

10

The Court finds that the foregoing sufficiently establishes a hostile work environment claim for this stage of the case. *Cf. Castleberry*, 863 F.3d at 265 (finding that a supervisor's single use of a racially charged slur, accompanied by threats of termination, constituted severe conduct that could create a hostile work environment); *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999) ("We have recognized that a plaintiff's own affidavit providing circumstantial evidence of discrimination may in certain cases be sufficient by itself to withstand a defendant's motion for summary judgment.").

From the statement of facts included with Defendant's motion for summary judgment, the Court understands that Defendant contests the foregoing account of events. (D.I. 30.) Yet Defendant has provided no evidentiary support for its opposing position, such as employment records, sworn affidavits, deposition transcripts, or anything else from which the Court could conclude that Plaintiff's account is "blatantly contradicted by the record." *Scott*, 550 U.S. at 380. The Court does not find Defendant's stated reason for failing to comply with the Court's discovery deadline compelling; likewise, the Court does not find dismissal of this action based on Plaintiff's alleged failings appropriate. Instead of demonstrating an absence of a genuine issue of material fact, as is Defendant's burden, Defendant's motion for summary judgment highlights numerous material facts contested by the parties. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585-86. As such,

summary judgment is not appropriate, and without further probing Plaintiff's discrimination claims, Defendant's motion for summary judgment will be denied.

Last, the Court considers Plaintiff's motion to subpoena his therapist (D.I. 28), Plaintiff's motion for a court date (D.I. 31), in which Plaintiff requests for his therapist to be subpoenaed and permitted to speak on his behalf, and Plaintiff's second motion for a court date (D.I. 35). These motions will be dismissed without prejudice as premature, as they were filed prior to the Court's ruling on Defendant's motion for summary judgment. The Court will set a trial date in due course, at which time, the parties may request witness subpoenas.

## V. **CONCLUSION**

For the above reasons, the Court will deny Defendant's motion for summary judgment (D.I. 29) and Plaintiff's six pending motions (D.I. 22, 27, 28, 31, 34, 35).

An appropriate Order will be entered.

12